[Nos. 25683-1-I; 25685-8-I; Division One. December 23, 1991.]
26580-6-I; 26680-2-I.

THE STATE OF WASHINGTON, *Respondent*, v. DAVID JAMES ALLYN, *Appellant*.

*Dennis Benjamin* and *Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Anna Dremousis, Deputy,* for respondent.

PEKELIS, J. — David James Allyn appeals his sentence, contending that the trial court erred in (1) imposing $100 victim's penalty assessments (VPA) and (2) failing to adjust his offender score, which he alleges was incorrectly calculated under the Sentencing Reform Act of 1981 (SRA). We affirm.

## I

On December 18, 1989, Allyn pleaded guilty to one count of possession of stolen property in the second degree and to one count of taking a motor vehicle without owner's permission (taking and riding). Allyn was sentenced on both counts on January 19, 1990. The trial court imposed a $100

VPA for each count, noting that the VPA was mandatory under RCW 7.68.035.[1] The trial court waived court costs and recoupment of attorney fees because of "the defendant's inability to pay."

On February 26, 1990, a restitution hearing was held pursuant to RCW 9.94A.140(2). At the hearing, the victim claimed losses totaling $4,960.99 which Allyn agreed to pay as restitution. The trial court ordered payment of statutory restitution in that amount.

In determining the appropriate standard range for imposition of Allyn's sentence, the trial court calculated his offender score for each offense to be 9. This was based on Allyn's eight prior convictions and his other current offense. With an offender score of 9, the standard sentencing range for each offense was 22 to 29 months. RCW 9.94A.310(1). The trial court sentenced Allyn on each count to the top of the standard range, 29 months' confinement, the sentences to run concurrently.

Allyn did not object to the court's computation of his offender score or the standard range at the January 19, 1990, sentencing hearing. On February 20, 1990, Allyn filed a notice of appeal of his sentence. In addition, at the February 26, 1990, restitution hearing, Allyn moved for reconsideration of the confinement portion of his sentence. Allyn contended that his correct offender score for each offense was 6 and therefore that the standard range for each offense should be 12-plus to 14 months.

The trial court denied the motion, noting that because there was no error on the face of Allyn's sentence, it lacked the authority to change the sentence.

Allyn appeals, challenging the trial court's imposition of the $100 VPA's, as well as the court's refusal to consider the

---

[1]RCW 7.68.035 states, in relevant part:

"(1) Whenever any person is found guilty . . . of having committed a crime, . . . there *shall* be imposed by the court upon such convicted person a penalty assessment. The assessment shall be in addition to any other penalty or fine imposed by law and shall be one hundred dollars for each case or cause of action that includes one or more convictions of a felony". (Italics ours.)

merits of his motion to reconsider sentence and its failure to adjust his allegedly incorrect offender score.

## II

We address first Allyn's challenge to the imposition of the $100 VPA's. Allyn assigns error to the trial court's automatic imposition of the VPA's without consideration of his present or future ability to pay. Because the court waived other financial obligations on the basis of his inability to pay, Allyn contends that imposition of the VPA's was constitutionally impermissible and should be stricken from his sentence.[2]

■ This precise issue was recently addressed and decided by this court in *State v. Curry*, 62 Wn. App. 676, 814 P.2d 1252 (1991). There, we held that RCW 7.68.035(1) makes imposition of the VPA by the sentencing court mandatory, and further, that the mandatory imposition of these minimal amounts did not implicate any constitutional rights. *Curry*, 62 Wn. App. at 681; *cf. State v. Eisenman*, 62 Wn. App. 640, 646-47, 810 P.2d 55, 817 P.2d 867 (1991) (failure to enter findings of defendant's ability to pay court costs not constitutional error requiring resentencing); *State v. Baldwin*, 63 Wn. App. 303, 310-11, 818 P.2d 1116 (1991) (failure to enter findings of defendant's ability to pay recoupment of attorney fees not violation of constitutional right to counsel).

Accordingly, the trial court did not err in imposing the $100 VPA's without consideration of Allyn's ability to pay.

## III

Allyn's second contention is that his offender score was miscalculated and that the trial court erred in concluding that it lacked the authority to correct his sentence when the issue was before the court on Allyn's motion to reconsider sentence.

---

[2] Allyn also asserts that the trial court's restitution order should be stricken from his sentence. However, because Allyn fails to assign error to the restitution order or to provide *any* argument or citation to authority, we do not address this issue. *See* RAP 10.3; *State v. Fortun*, 94 Wn.2d 754, 756, 626 P.2d 504 (1980).

Allyn is correct that, if erroneous, the trial court possessed the authority to correct his sentence. The trial court has the power and duty to correct an erroneous sentence upon its discovery. *State v. Smissaert*, 103 Wn.2d 636, 639, 694 P.2d 654, *review denied*, 104 Wn.2d 1026 (1985); *State v. Loux*, 69 Wn.2d 855, 858, 420 P.2d 693 (1966), *cert. denied*, 386 U.S. 997 (1967).

■ It is impossible to determine positively from the record whether the trial court ruled on the merits of Allyn's motion and denied it or decided it was not properly before the court. In any event, it would be inefficient for this court to remand to the trial court for a ruling on Allyn's motion at this point. The substantive issue of the proper offender score is a question of law which we would review de novo. *See Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988), *aff'd on rehearing*, 113 Wn.2d 148 (1989). Thus, we directly consider and resolve the issue before us.

The trial court computed Allyn's score as 9, which yields a standard sentencing range of 22 to 29 months. RCW 9.94A.310. Allyn's criminal history included, *inter alia*, three separate convictions imposed between 1977 and 1980 for (1) taking and riding, (2) second degree burglary, and (3) second degree possession of stolen property. In each case, Allyn received a suspended sentence; none was ordered to run concurrently with the other.

On July 25, 1980, Allyn's suspended sentences for taking and riding and second degree burglary were revoked and his terms of confinement were ordered to run concurrently with each other. On September 17, 1980, Allyn's suspended sentence for second degree possession of stolen property was also revoked and his term of confinement on this offense was ordered to run concurrently with his two earlier convictions. Allyn argues that these three convictions should be counted as one conviction instead of three because all three sentences, when revoked, were ordered to run concurrently with each other.

Allyn also had two separate convictions in 1982 and 1983. On September 20, 1982, Allyn received a nonconcurrent

suspended sentence for failure to return. On October 18, 1983, he received concurrent sentences of confinement for convictions on second degree burglary and taking and riding. On the same day, Allyn's suspended sentence for his failure to return conviction was revoked and his term of confinement was ordered to run concurrently with the second degree burglary and taking and riding sentences. Allyn argues that his failure to return sentence should be added to the concurrent second degree burglary and taking and riding sentences and thus be counted as one conviction instead of two. The net effect of Allyn's proposed reductions would be to reduce his offender score from 9 to 6.

The issue raised by Allyn is whether suspended sentences, separately imposed at different times without reference to one another, constitute "convictions served concurrently" within the meaning of RCW 9.94A.360(6)(c) when the suspended sentences are ultimately revoked and ordered to run concurrently.

RCW 9.94A.360(6)[3] provides, in relevant part:

> In the case of multiple prior convictions, for the purpose of computing the offender score, count all convictions separately, *except*:
>
> . . . .
>
> (c) In the case of multiple prior convictions for offenses committed before July 1, 1986, . . . *count all adult convictions served concurrently as one offense* . . ..[4]

(Italics ours.)

Since the enactment of the SRA, Washington courts have sought to interpret the phrase "convictions served concurrently" in order to determine when subsection (c) applies. Each of the three divisions of this court has addressed the issue at least once. First, in *State v. Hartley*, 41 Wn. App. 669, 673-74, 705 P.2d 821, *review denied*, 104 Wn.2d 1028

---

[3]This identical provision was formerly RCW 9.94A.360(11), then RCW 9.94A.360(5).

[4]By contrast, for offenses committed after July 1, 1986, multiple prior convictions are counted separately unless they encompass the same criminal conduct. RCW 9.94A.360(6)(a).

(1985) (*Hartley* I), Division Two held that separate sentences which incidentally overlapped were not concurrent for purposes of subsection (c).[5] In reaching its decision, the court reasoned that "the Legislature's true intent was to include one offense in criminal history when prior concurrent sentences were *judicially imposed* for more than one offense". *Hartley* I, 41 Wn. App. at 673.

In *State v. Harper*, 50 Wn. App. 578, 582, 749 P.2d 722 (1988), this division held that in order to constitute a "judicially imposed" concurrent sentence, there must be a "manifestation in the record of the exercise of judicial discretion by the sentencing judge indicating the intention to impose concurrent sentences." *Accord, State v. Hartley*, 51 Wn. App. 442, 447-49, 754 P.2d 131 (1988) (*Hartley* II); *State v. Johnson*, 48 Wn. App. 531, 538-39, 740 P.2d 337, *review denied*, 109 Wn.2d 1011 (1987).

In *State v. Chavez*, 52 Wn. App. 796, 799, 764 P.2d 659 (1988), Division Three further refined the requirements of a judicially imposed concurrent sentence for purposes of RCW 9.94A.360(6)(c). The court in *Chavez* held that a judicial order directing the *remainder* of a deferred sentence to be served concurrently with later sentences did not convert the deferred sentence into one concurrent with the later sentences. *Chavez*, 52 Wn. App. at 798-99. The court reasoned that Chavez's initial sentence, entered years earlier, could not be concurrent with the later sentences because Chavez had already served some of his initial sentence. *Chavez*, 52 Wn. App. at 799. In effect, the court concluded, the remainder of the initial sentence simply overlapped the later sentences. *Chavez*, 52 Wn. App. at 799. Accordingly, the court held that the deferred sentence was properly treated as a separate conviction for purposes of computing the offender score under subsection (c). *Chavez*, 52 Wn. App. at 799.

---

[5] *But see State v. Johnson*, 49 Wn. App. 239, 242-43, 742 P.2d 178 (1987) (separate sentences served concurrently count as one conviction for purposes of computing offender score), *review denied*, 110 Wn.2d 1006 (1988).

The court in *Chavez* also based its interpretation of subsection (c) on the fact that acceptance of Chavez's argument would lead to the "absurd" result of giving a defendant who fails probation on a prior conviction and sentence a lower offender score than one who successfully completes probation and would thus defeat the purposes of the SRA. *Chavez*, 52 Wn. App. at 799. The court in *Hartley* I similarly stated that to construe subsection (c) as Hartley proposed would be absurd:

> The statute takes careful account of each prior felony conviction . . . .. It would be utterly inconsistent with this detailed plan to construe the statute so that a defendant who had committed and been sentenced separately for several serious crimes over a period of years, but who happened to serve overlapping prison terms for them at the same time, would be deemed to have committed only one offense.

*Hartley* I, 41 Wn. App. at 673.

Recently, in *State v. Roberts*, 117 Wn.2d 576, 817 P.2d 855 (1991), our Supreme Court limited the holding in *Chavez*. In *Roberts*, the defendant was sentenced to two consecutive 5-year terms in March of 1981. In August of 1981, he was sentenced to two concurrent 10-year terms, which the sentencing judge specifically ordered to run concurrently with the previously imposed 5-year terms.

Relying in part on *Chavez*, the Court of Appeals held that for sentences to truly be served concurrently, they "must begin and end at the same time." *State v. Roberts*, 58 Wn. App. 387, 389, 793 P.2d 981 (1990), *rev'd*, 117 Wn.2d 576, 817 P.2d 855 (1991). The Supreme Court reversed, rejecting the broad rule enunciated by the Court of Appeals. *Roberts*, 117 Wn.2d at 583. The Supreme Court held that Roberts' terms were concurrent for purposes of RCW 9.94A.360(6)(c) even though they did not begin and would not end together. *Roberts*, 117 Wn.2d at 586. The Supreme Court explained:

> In this case, Roberts' 1981 sentences were imposed 5 months apart. First, Roberts was sentenced to two consecutive 5-year terms. He was then sentenced to two concurrent 10-year terms. The second sentence was imposed with *express* reference to the first, and the record manifested judicial intent to impose concurrent sentences. This figures to about

5 months of "overlap" in sentences amounting to 10 years. Very simply, the abuses to be avoided and the "absurd" circumstances referred to in *Hartley* I are not present in this case. These distinctions militate against this court following *Hartley* I and *Chavez* analyses, as did Division Three in the instant case.

*Roberts*, 117 Wn.2d at 583.

Although the *Roberts* court refused to apply the *Chavez* analysis to the facts before it, it did not overrule *Chavez* itself. Rather the Supreme Court merely distinguished the *Chavez* situation where:

the court sought to avoid the absurd result of giving a *lower* offender score to a defendant who had failed probation and thus was required to serve additional overlapping time with his new offense than to a defendant who had successfully completed an earlier probation and thus had no overlap in time served. In that the court in *Chavez* was considering remaining probation time, *Chavez* is distinguishable from the instant case.

*Roberts*, 117 Wn.2d at 582.

■ Allyn's situation is comparable to that in *Chavez*. All the sentences challenged by Allyn were *suspended* sentences which he did not successfully complete, and which, years later, a different sentencing judge swept into a newly imposed sentence of confinement. As in *Chavez*, Allyn's earlier sentences involved "remaining probation time". *See Chavez*, 52 Wn. App. at 799. To collapse these failed suspended sentences into the current conviction with which they were ultimately merged would lead to the same absurd result described in *Chavez* and acknowledged by the Supreme Court in *Roberts*.

Thus, we conclude that Allyn's challenged convictions do not qualify as "convictions served concurrently" for purposes of RCW 9.94A.360(6)(c).

Affirmed.

GROSSE, C.J., and AGID, J., concur.

Review denied at 118 Wn.2d 1029 (1992).