[No. 29813-5-I.   Division One.   August 23, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. JOSEPH W. TREPANIER, *Appellant.*

---

[9]*Concerned Land Owners*, 64 Wn. App. at 772.

*Elizabeth Govaerts* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Constance Crawley, Deputy,* for respondent.

PER CURIAM. — Joseph W. Trepanier appeals the judgment and sentence entered on his conviction for one count of taking a motor vehicle without permission and four counts of attempted first degree theft. The case has been referred to a

panel of this court for accelerated review pursuant to RAP 18.12. We affirm.

## FACTS

Trepanier was charged by amended information with one count of taking a motor vehicle without permission and four counts of attempted first degree theft. The charges stem from events occurring between September 22 and 23, 1991, in which Trepanier allegedly attempted to steal four different motor vehicles and, along with codefendant Kelly Smith, unlawfully rode in another car without the owner's permission.

Count 1 charged Trepanier with taking or riding in a Porsche belonging to Brian Mitchell on or about September 22 through September 23, 1991, with knowledge that the vehicle was unlawfully taken. Counts 3 and 4 charged Trepanier with attempting to steal two motor vehicles belonging to Dennis Mattson during the same time period. Counts 5 and 6 charged Trepanier with attempting to steal a 1973 Karmann Ghia and a 1985 Chevrolet Blazer belonging to Steve and Carol Rose during the early morning hours of September 23, 1991.

At the subsequent jury trial, Brian Mitchell testified that he owned a Porsche that was taken from his residence without permission sometime during the night and early morning hours of September 22 to 23, 1991. Dennis Mattson (Mitchell's neighbor) testified that he was the owner of a 1986 Buick Skylark and a 1987 pickup truck. Mattson stated he discovered the vehicles had been "prowled" on the morning of September 23. According to Mattson, the glove boxes in both vehicles were open and the contents were scattered on the seats of the vehicles. Mattson testified that both vehicles were in fairly good condition and were worth over $1,500.

Steven Rose testified that he and his wife lived in a housing development known as "The Falls", that a Porsche crashed into a nearby hillside in the early morning hours of

September 23, and that he heard his next-door neighbor yelling at a couple of people near the accident site. Mr. Rose stated that his family owned a Chevrolet S-10 Blazer and a Karmann Ghia, and that the vehicles were parked in the driveway of the family residence on the morning in question. Mr. Rose testified that he later discovered "that in each one of the cars everything that had been in the glove compartments had been taken out and was thrown either on the passenger's seat or on the floor." Mr. Rose stated that the Blazer was in good condition and that someone had recently offered to buy the Karmann Ghia for $7,000. Carol Rose testified to similar facts.

Jeff Kern, who lived next door to the Roses, testified that a dark colored sports car had smashed into a nearby hillside on September 23. Kern stated that he observed two men standing on either side of the car, later identified as Smith and Trepanier, and that the men started walking away from the accident. Kern stated that he then heard his father yell "You SOB, get away from my car. You can't steal it" and saw Trepanier's hand pulling away from his father's car door. According to Kern, Trepanier later entered the Karmann Ghia belonging to the Roses and "started to look in it, like he was looking for a key or something like that." Report of Proceedings, at 149. Kern further testified that Trepanier exited the vehicle after a few seconds and walked over to the Blazer. Kern stated that he chased after Trepanier just as Trepanier started to get into the Blazer. A police detective testified that the pickup, the Skylark, and the Blazer each had a bluebook value of over $1,500.

Kelly Smith was called as a witness for the State. Smith admitted taking the Porsche and attempting to leave the scene of the accident in another stolen vehicle. Smith testified that Trepanier was a passenger in the Porsche when it crashed into the hillside, but that Trepanier was not with him when he initially stole the Porsche and that they had

no agreement to steal other vehicles. Smith testified that he alone was responsible for attempting to steal the vehicles.

The defense moved to exclude evidence of Smith's prior convictions for taking a motor vehicle without permission. The motion was denied and the State was allowed to impeach Smith with his prior convictions of taking a motor vehicle without permission.

Trepanier was found guilty as charged. Trepanier appeals, raising two basic issues.

ISSUES

1. Is there sufficient evidence to support finding Trepanier guilty of the four counts of attempted first degree theft as charged in the amended information?

2. Did the trial court err in admitting codefendant Smith's prior convictions for taking a motor vehicle without permission for impeachment purposes?

DECISION

Trepanier challenges the sufficiency of the evidence to sustain his conviction on counts 3, 4, 5, and 6. He contends that the State failed to prove all the essential elements of the charged offenses.

In determining the sufficiency of evidence, the test is "whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Grover*, 55 Wn. App. 923, 930, 780 P.2d 901 (1989), *review denied*, 114 Wn.2d 1008 (1990); *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980); *Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). In applying this test, the reviewing court admits the truth of the State's evidence and all inferences that can be reasonably drawn therefrom.

As charged in this case, the crime of attempted first degree theft includes two key elements: (1) intent to commit a theft of property which exceeds $1,500 in value, and (2) a substantial step toward the commission of that crime. RCW 9A.28.020(1); RCW 9A.56.030(1)(a).

Trepanier argues that no rational trier of fact could conclude from the evidence presented at trial that he took a substantial step toward wrongfully obtaining or exerting unlawful control over the four vehicles he was charged with attempting to steal.

With regard to counts 5 and 6, a rational trier of fact could have inferred that Trepanier attempted to steal the Rose vehicles. It must be remembered that Trepanier has not challenged the sufficiency of the evidence to support his conviction for taking a motor vehicle without permission as charged in count 1 of the amended information. It is therefore undisputed that Trepanier rode in the Porsche belonging to Brian Mitchell knowing the vehicle was unlawfully taken. Nor is it disputed that the Porsche crashed into an embankment near where the Rose vehicles were parked. An eyewitness testified that he observed Trepanier open the door to the Karmann Ghia belonging to the Roses and enter the vehicle. The witness stated that Trepanier appeared to be looking for something inside the vehicle. The witness also testified that he chased after Trepanier as Trepanier was attempting to join Smith in the Roses' Blazer. This testimony establishes that Trepanier was at the scene in the relevant timeframe. The owners of the Karmann Ghia and Blazer both testified that the glove boxes of both vehicles had been opened and that the contents had been scattered throughout the vehicles. Smith and Trepanier were overheard talking about searching the nearby cars and looking for something to take. Given Trepanier's presence at the scene of the crimes and his suspicious behavior, there was sufficient evidence upon which a rational trier of fact could find that Trepanier attempted to steal the two vehicles belonging to the Roses.

As to counts 3 and 4, Trepanier contends that there is no direct evidence linking him to the Mattson vehicles. Considering the similar manner in which the crimes in counts 5 and 6 and counts 3 and 4 were committed, however, the jury could reasonably have inferred that the crimes were committed by the same individuals. Mattson testified that

the glove boxes in his two vehicles had been opened and the contents scattered all over the inside of the vehicles. The two vehicles belonging to the Roses suffered a similar fate. There is a direct nexus between Trepanier and the crimes committed against the Rose vehicles. "Circumstantial evidence is no less reliable than direct evidence; specific criminal intent may be inferred from circumstances as a matter of logical probability." *State v. Zamora*, 63 Wn. App. 220, 223, 817 P.2d 880 (1991). Mattson was the neighbor of the person who owned the stolen Porsche. Trepanier was a passenger in the Porsche at the time of the accident. Smith gave an improbable explanation as to how Trepanier happened to be in the Porsche. When viewed in a light most favorable to the State, this evidence was sufficient to sustain Trepanier's conviction on counts 3 and 4.

Trepanier next contends that the trial court erred in permitting the State to impeach Smith with evidence of his prior convictions for taking a motor vehicle without permission. He argues that, since the single crime of taking a motor vehicle without permission may be committed either (1) by actually taking the vehicle without permission of the owner, or (2) by voluntarily riding in the vehicle with the knowledge that it was unlawfully taken, *State v. Pettitt*, 93 Wn.2d 288, 293, 609 P.2d 1364 (1980), the offense may not be admissible for impeachment purposes under ER 609(a)(2), which provides in part:

> For the purpose of attacking the credibility of a witness in a criminal or civil case, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness but only if the crime . . . (2) involved dishonesty or false statement, regardless of the punishment.

Trepanier claims that the determination of whether a particular conviction for taking a motor vehicle without permission falls under ER 609(a)(2) depends on which of the two alternative means of committing the crime is charged and proved. He concedes that a conviction under the first or "taking" prong of RCW 9A.56.070 is a crime involving dis-

honesty and is therefore admissible under ER 609(a)(2). Trepanier nevertheless argues that a conviction under the second or "riding" prong is not automatically admissible under the rule. Since in this case there is no way of telling which of the alternatives was used to convict Smith of his seven prior convictions of taking a motor vehicle without permission,[1] Trepanier claims that the trial court erred in admitting the impeachment evidence.[2] We disagree.

■ The law is now well established that "crimes of theft involve dishonesty and are *per se* admissible for impeachment purposes under ER 609(a)(2)." *Ray*, 116 Wn.2d at 545. "The term 'dishonest' implies the act or practice of telling a lie, or of cheating, deceiving, and stealing." *Ray*, 116 Wn.2d at 545 (quoting *State v. Brown*, 113 Wn.2d 520, 552, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989)). A criminal offense which therefore has as an element the intent to deprive another of his or her property is a crime of dishonesty. *See State v. Schroeder*, 67 Wn. App. 110, 116, 834 P.2d 105 (1992).

In *State v. Nelson*, 63 Wn.2d 188, 190, 386 P.2d 142 (1963), the court held:

> The offense of taking another's automobile without permission is similar to the crime of larceny, in the sense that both

---

[1]Trepanier's entire argument is premised on the fact that the trial court "was unable to determine whether Smith's prior convictions were based upon actually taking the motor vehicles or simply riding in them[.]" Opening Brief of Appellant, at 19. However, the record clearly establishes that Smith was convicted of the offenses for *stealing* the motor vehicles in violation of the "taking" prong of RCW 9A.56.070. Based on Trepanier's own argument, Smith's prior convictions were therefore automatically admissible under ER 609(a)(2).

[2]Trepanier argues in a footnote in his opening brief that the State should not have been permitted to call Smith as a witness and then impeach him under ER 607. However, we need not consider the issue because it is being raised for the first time on appeal. ER 103(a)(1). In addition, "placing an argument of this nature in a footnote is, at best, ambiguous or equivocal as to whether the issue is truly intended to be part of the appeal." *State v. Johnson*, 69 Wn. App. 189, 194 n.4, 847 P.2d 960 (1993). Finally, there is nothing to suggest that the State's sole purpose for calling Smith as a witness was to impeach his credibility. Quite the contrary, Smith's testimony established that Trepanier was a passenger in the stolen Porsche and that he was present at the accident site.

offenses involve the wrongful taking of another's property. It is, however, a separate statutory offense, distinguishable from larceny. *State v. Daniels*, 119 Wash. 557, 205 Pac. 1054 [(1922)]; *State v. Phillips*, 179 Wash. 607, 38 P. (2d) 372 [(1934)]; *In re Arquette v. Schneckloth*, 56 Wn. (2d) 178, 351 P. (2d) 921 [(1960)]. The gist of larceny is wrongful taking with an intent to permanently deprive another of his property. The gist of the statutory offense is the intentional taking or driving away of the automobile of another without permission. Intent to permanently deprive is not an element.

*See also State v. Williams*, 22 Wn. App. 197, 199, 588 P.2d 1201 (1978) ("while joyriding is not a full-blown larcenous theft, it is definitely a related offense and an essential element is knowledge on the part of the taker that the taking is unlawful").[3] *But see State v. Daniels*, 119 Wash. 557, 205 P. 1054 (1922) (larceny and the "joyriding" offense are two separate and distinct crimes).

In *State v. McKinsey*, 116 Wn.2d 911, 913-14, 810 P.2d 907 (1991), the Supreme Court held that a prior conviction for possession of stolen property in the first degree is automatically admissible to impeach the credibility of a witness under ER 609(a)(2). The court noted that the Legislature had classified the crime of first degree stolen property in the chapter of the criminal code entitled "Theft and Robbery". *McKinsey*, 116 Wn.2d at 913. Likewise, the crime of taking a motor vehicle without permission is classified under the same chapter title.

The "joyriding" statute, RCW 9A.56.070(1), provides:

> Every person who shall without the permission of the owner or person entitled to the possession thereof intentionally take or drive away any automobile or motor vehicle, whether propelled by steam, electricity, or internal combustion engine, the property of another, shall be deemed guilty of a felony, and every person voluntarily riding in or upon said automobile or motor vehicle with knowledge of the fact that the same was unlawfully taken shall be equally guilty with the person taking or

---

[3]At the time *Williams* and *Nelson* were decided intent to permanently deprive was still considered an element of theft. *See State v. Burnham*, 19 Wn. App. 442, 444-45, 576 P.2d 917, *review denied*, 90 Wn.2d 1020 (1978). However, intent to "permanently deprive" is no longer an element of theft as defined in RCW 9A.56-.020(1). *State v. Komok*, 113 Wn.2d 810, 816-17, 783 P.2d 1061 (1989).

driving said automobile or motor vehicle and shall be deemed guilty of taking a motor vehicle without permission.

Under this statute, the State must "prove either an unlawful taking, *or* riding in the vehicle with knowledge that it was unlawfully taken." *State v. Zakel*, 61 Wn. App. 805, 811, 812 P.2d 512 (1991), *aff'd*, 119 Wn.2d 563, 834 P.2d 1046 (1992). Knowledge that the vehicle was taken unlawfully is an essential element of the charge of taking a motor vehicle without permission. *State v. Simmons*, 30 Wn. App. 432, 435, 635 P.2d 745 (1981), *review denied*, 97 Wn.2d 1007 (1982).

Guilty knowledge must exist regardless of which prong of the statute is charged. A defendant is guilty under the "riding" prong of RCW 9A.56.070 if he or she "knows the vehicle was taken without the permission of the owner or person entitled to the possession of the vehicle." *State v. Rinier*, 93 Wn.2d 309, 314, 609 P.2d 1358 (1980). The "rider" is therefore aware that during the time he or she is in the stolen vehicle the lawful owner is being deprived of the use and possession of the vehicle. By entering and remaining in the vehicle, the "rider" implicitly agrees to continue the deprivation. The only fundamental difference between the "rider" and the "taker" of the vehicle is found in the role each played in arranging the deprivation in the first place. Accordingly, the crime of taking a motor vehicle without permission is a crime of dishonesty under either prong of RCW 9A.56.070. The trial court thus properly admitted into evidence Smith's prior convictions for taking a motor vehicle without permission.

Affirmed.