[No. 38637-9-I.  Division One.  September 2, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. EARL LEE FORD, *Appellant*.

*David L. Donnan* of *Washington Appellate Project,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Erin Riley, Deputy,* for respondent.

COLEMAN, J. — Earl Lee Ford appeals an exceptional sentence imposed after he pleaded guilty to a number of first degree theft charges. In calculating Ford's offender score as 11 under the Sentencing Reform Act of 1981 (SRA), the lower court included three prior California convictions in Ford's criminal history. Ford acknowledged that he had pleaded guilty to the three offenses and raised no objection to the State's assertion that they would be felonies under Washington law. He argued that they should not count as convictions only because he had been

civilly committed. On appeal, Ford argues that the State failed to prove that the offenses would be classified as felonies in Washington. Because the record contains no facts to support Ford's claim that the California offenses might not be comparable to felonies in Washington, we affirm the calculation of Ford's offender score. We also affirm the exceptional sentence.

Ford pleaded guilty to six counts of first degree theft and one count of attempted theft. In his statement on plea of guilty, Ford stipulated to the facts in the certification of probable cause for sentencing purposes. As a typical example of Ford's crimes, we recite the facts as alleged in count 1.

In November 1993, Ford met sixty-eight-year-old Tendon Wakely and said that he had come from South Africa to collect a large insurance settlement on his brother's death. Ford explained that he had received the proceeds but that the South African government would not allow blacks to bring money back into the country. Ford corroborated his story with a phony letter on a law firm's letterhead, indicating his receipt of the settlement funds. He also showed Wakely a letter from the "South Africa Evangelical Lutheran Church" stating that he could not return with the money.

When Ford said that he wanted to donate the money to a church, Wakely offered to drive him to one. On the way, Ford suggested that they stop at a restaurant. When the two got out of Wakely's car, they encountered Ford's accomplice. After striking up a conversation, Ford said that he might give his money to Wakely and the accomplice to donate to charities if he could be assured that they would not keep it for themselves. The accomplice suggested that he and Wakely prove their honesty by withdrawing cash from their bank accounts as a show of good faith.

After the accomplice purportedly withdrew cash from his bank account, he gave Ford an envelope, stating that it contained $15,000. Ford then added a large roll of what

appeared to be hundred-dollar bills. The accomplice took the envelope and went back into his bank to deposit the entire amount.

Ford then asked Wakely if he was equally honest and Wakely agreed to withdraw money from his bank. Wakely withdrew $11,000 and made a $4,000 cash advance against his credit card. Ford took the cash and wrapped it in a piece of cloth. He then appeared to add two rolls of hundred-dollar bills and tied the cloth into a bundle. When Wakely later opened the cloth, he found that it contained newspaper scraps. Ford and his accomplice had walked away with Wakely's $15,000.

The other six counts against Ford involved similar con schemes. Ford stipulated that his seven victims' ages ranged from 66 to 83. His plea agreement warned that the prosecutor would seek an exceptional sentence.

At the sentencing hearing, Ford objected to the State's inclusion of three prior California convictions for grand theft and forgery in his criminal history. The State had alleged that all three offenses were felonies under Washington law. Ford argued that although he had pleaded guilty to the crimes, he had been civilly committed as a drug addict under California law. He claimed that commitments under California's Civil Addicts Act only count as "convictions" for sentencing purposes in narcotics cases. Ford also argued that the commitments were subject to discharge upon his completion of drug rehabilitation programs and therefore should not count as convictions under the SRA. He did not dispute that his acts would constitute felonies under Washington law. Excluding the California offenses, Ford computed his offender score as 8.

The court found that the three California offenses counted as felony convictions and calculated Ford's offender score as 11. An offender score of "9 or more" yielded a standard sentencing range of 43 to 57 months for each first degree theft count. The court, however, imposed concurrent sentences of 120 months for each theft count and 60 months for the attempted theft.

Besides appealing his offender score calculation, Ford assigns error to the following findings of fact in support of the exceptional sentence:

1.1 The defendant targeted elderly and disabled men whose average age was 74 years[.]

1.2 Ford knew of their vulnerability due in large part to his past criminal activity. In Ford's California convictions he targeted elderly women.

1.3 The violence of financial devastation is felt even more keenly by the elderly who face increasing health care costs and decreased or no opportunity for income recoupment. They are close to, if not already, retired and do not face a future of income growth to supplement their loss. They must often suffer cutbacks in their anticipated standard of living and retirement plans. The emotional trauma is also devastating.

Ford also challenges the sentencing court's conclusions of law:

2.1 There are substantial and compelling reasons justifying the imposition of an exceptional sentence above the standard range upon the defendant.

2.2 The victims of these crimes were particularly vulnerable due to their advanced age. RCW 9.94A.390(2)(b).

2.3 The current thefts were major economic offenses justifying an exceptional sentence.

2.4 The high level of planning and sophistication involved with these crimes justifies an exceptional sentence. RCW 9.94A.390(2)(c)(iii).

2.5 An outer range sentence is justified in particular given the offender score of the defendant. RCW 9.94A.390(2)(g).

We first decide whether the sentencing court correctly included the California convictions in calculating Ford's offender score. Ford argues that the State failed to prove that the three convictions existed or that they would be classified as felonies under Washington law. Because Ford acknowledged that he had pleaded guilty to the disputed

convictions and objected only to their use in increasing his offender score, we affirm the finding that the convictions exist. And while Ford objected to the inclusion of the convictions in his criminal history, he did not specifically challenge the State's assertion that they were comparable to felonies under Washington law. Rather than alleging that a sentencing error was committed below, Ford merely asserts the possibility that his California offenses do not constitute felonies in Washington. Because the record fails to support this argument, we affirm the lower court's offender score calculation.

■■ In establishing a defendant's criminal history for sentencing purposes, the State must prove the existence of prior foreign convictions by a preponderance of the evidence. *State v. Ammons*, 105 Wn.2d 175, 185-86, 713 P.2d 719, 718 P.2d 796, *cert. denied*, 479 U.S. 930 (1986); RCW 9.94A.110. If a defendant disputes a material fact at sentencing, the court must either not consider the fact or conduct an evidentiary hearing on the point. RCW 9.94A370(2). But if no timely and specific objection is made, the information is considered acknowledged. RCW 9.94A.370(2); *State v. Mail*, 121 Wn.2d 707, 712, 854 P.2d 1042 (1993).

In this case, we hold that the sentencing court properly considered Ford's three California convictions in calculating his offender score. While Ford objected to the use of those convictions in calculating his offender score, he never challenged the fact that he had pleaded guilty to the crimes. A "conviction" includes the acceptance of a guilty plea. RCW 9.94A.030(9). Ford therefore acknowledged the prior California convictions.

■■ While Ford was civilly committed to a drug rehabilitation center as a narcotics addict under California law, the sentence that Washington would impose determines an out-of-state conviction's classification under the SRA. RCW 9.94A.360(3). A prior conviction can be excluded from an offender's criminal history only if it has been vacated. RCW 9.94A.230. Thus, the fact that Ford's

prior crimes were punished by civil commitment and subject to dismissal does not exclude them from his criminal history. *See State v. Moore*, 75 Wn. App. 166, 170-71, 876 P.2d 959 (1994) (conviction's dismissal upon completion of probation is not a "vacation"). Because Ford acknowledged that he pleaded guilty to the disputed California crimes, we hold that the State proved that the convictions exist.

■■ The foreign convictions could be used to increase Ford's offender score only if the State proved they would constitute felonies in Washington. *State v. Cabrera*, 73 Wn. App. 165, 168, 868 P.2d 179 (1994). The failure to challenge an offender score calculation at sentencing does not necessarily preclude appellate review. *State v. Roche*, 75 Wn. App. 500, 513, 878 P.2d 497 (1994). But in this case, the State had specifically alleged that the disputed California convictions were "felonies under Washington law." Ford was thus on notice of the State's position, but his only objection to including the crimes in his offender score was that he had been punished with civil commitment. By raising only this issue, Ford led the sentencing court to believe that this was his only objection. We hold that Ford thereby waived his present argument that the offenses were not comparable to felonies in Washington.

In any event, the record is devoid of the underlying facts upon which Ford's California convictions were based. It is thus impossible to determine how the crimes would be classified in Washington. While this fact mandated a remand for an offender score recalculation in *Roche*, that case does not control here. The defendant in *Roche* specifically alleged that his offender score had been erroneously calculated. 75 Wn. App. at 512-13. Ford, by contrast, only claims hypothetically that his California convictions may not be felonies. We decline to remand this case based on pure speculation. Because the record contains no information with which we can evaluate Ford's claim that a sentencing error was possibly made, we uphold the lower court's calculation of Ford's offender score. On direct ap-

peal, a defendant must point to facts in the record that support an allegation that his or her offender score was erroneously calculated.

We affirm.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

GROSSE and AGID, JJ., concur.

Review granted at 134 Wn.2d 1019 (1998).