[No. 19666–9–I.   Division One.   September 6, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES KENNETH BOND, *Appellant.*

*Neil M. Fox* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Saul Gamoran* and *Donna L. Wise, Deputies,* for respondent.

SCHOLFIELD, C.J.—The defendant, James Kenneth Bond, appeals his conviction for robbery in the second degree. We affirm.

## FACTS

On May 17, 1986, at about 1 a.m., Daniel Rozek was working at a Domino's pizza store in Federal Way, when a tall, thin male in his early twenties entered the store and asked to use the restroom. This man was Robert Keith Langston. After Rozek told him that the store did not have a restroom for public use, Langston walked behind the counter and told Rozek to open the till. Langston was carrying what appeared to be a gun. Rozek could see a barrel with tape around it. Rozek told him that he did not have the keys to the till and that he would have to go to the office. The two men went to the office, got the key and returned to the till. Rozek opened it and took out the contents, a $5 bill and some change, and put it in a bag Langston was holding. Langston then looked in the store safe and in some other money bags, but found no other cash. Langston then left the store.

John Labbe, a Domino's employee, was sitting in his car outside the store taking a break at the time of the robbery. He testified that he saw two men enter a light–colored Pinto hatchback. Both men appeared to Labbe to be in their early twenties.

Langston testified that on May 16, he contacted Bond over the latter's pager and arranged to meet him later that evening. Langston said he and Bond talked about getting drugs or money. Bond and his girl friend, Melanie Quine, picked up Langston at around 11 p.m. Quine was driving, and Bond and Langston discussed getting money. Langston testified that he proposed to Bond that they rob a Little Caesar's pizza store. Langston said the plan was for him to go inside the store and hold it up, while Bond was to stand outside as a lookout and to indicate if anyone was coming. Langston would use a device that he made from coat hangers that looked like a gun. Langston, Bond and Quine went to a Little Caesar's, but Langston decided that there were too many people around to rob the store, so he, Bond and Quine drove off.

Langston said that eventually they spotted the Domino's pizza store. Langston told Bond to stand outside to watch for people and to indicate if anyone drove up, while Langston went inside to get money. Langston testified that he never directly told Bond exactly how he would get the money, but because they had discussed the plan earlier with regard to Little Caesar's, he assumed Bond knew what was happening. After Langston robbed Domino's, he and Bond walked back to the car where Quine was waiting. They drove to Bond's house, where Bond changed clothes, and then drove off again. A few minutes later, a police car pulled their car over and arrested them. Langston said that prior to being pulled over, Bond and he discussed telling the police that Langston was just a hitchhiker.

Quine testified that on the evening of May 16, she and Bond went to see a movie and then drove around in her car while Bond tried to make arrangements to meet his friend. Eventually, they picked up Langston and drove around with him for a while. Bond and Langston talked between themselves a number of times, without letting Quine know what they were talking about. Quine drove the two men to Little Caesar's and then to a parking lot near Domino's. The two men left her alone in the car for a while and then returned. Quine said they stopped briefly at Bond's house, where Bond changed clothes and a few minutes later, the police pulled the car over and arrested them.

Quine did not know at first why they were being arrested, although she later learned that it was on suspicion of robbery. Quine spent the night in jail and was released the next day. The following evening, Bond called Quine. Quine asked Bond why he robbed Domino's. Bond responded that he needed the money to pay off debts and that Langston had told him he would get $200 to $400.

King County Police Officer Rudy Hasenwinkle testified that he interviewed Bond at the police station and that Bond admitted to being a "lookout" for Langston while Langston robbed Domino's. Hasenwinkle said that Bond wanted to make a deal with him, but Hasenwinkle refused.

King County Police Detective Robert Stockham testified that a few days after Bond spoke with Hazenwinkle, he had a conversation with Bond in which Bond told Stockham that when he was arrested he was drunk, that he made everything up, and that he had told Hazenwinkle he was just a lookout because Hasenwinkle told him that he would not go to jail if he gave information about Langston. Bond told Stockham that the reason that he stopped at a variety of places before the robbery was to buy drugs and that he did not know about a robbery until after Langston had committed it.

Bond testified that he did not know that Langston was going to rob Domino's when Langston went inside. Rather, Bond thought Langston was going inside to use the restroom. Bond waited outside because he was supposed to meet a contact at the nearby Jack In The Box to buy some marijuana. Bond admitted going by Little Caesar's earlier because Langston said he knew someone there who could sell them some marijuana. Bond testified that Langston admitted to Bond during the course of the evening that he had committed some other robberies. Bond stated that he did not find out from Langston that Langston robbed Domino's until after Bond had changed his clothes.

Bond admitted telling Officer Hasenwinkle that he was a "lookout", but he thought a lookout was someone looking out for someone else and that he was looking out for his drug connection—he was not a lookout for a robbery. He also denied telling Quine that he had been involved in a robbery—he just had apologized to her for involving her in the incident.

The State charged Langston and Bond with one count of robbery in the second degree. Langston entered a plea of guilty.

Prior to trial, Bond made a motion in limine to exclude evidence of his March 1986 conviction for burglary in the second degree. The court inquired of the prosecutor how old the felony was and ruled that the evidence would be

admissible for impeachment purposes only. The court indicated that "the record can be deemed an in limine ruling at this time that the prior felony in March of 1986 may be used for impeaching purposes in the event the defendant testifies."

The prosecutor indicated that he thought the court should balance the *Alexis*[1] factors on the record, which the court indicated could be done after jury selection.

During trial, the prosecutor indicated that it would be acceptable if Bond introduced evidence of the conviction on direct examination, rather than waiting for him to use it in impeachment, and further indicated that it would be acceptable if the evidence came out only as a prior felony conviction, without specifying the type of felony.

When asked by defense counsel to address the record as to how a prior burglary conviction had any bearing on credibility, the court ruled as follows:

> Well, I suggest that the proximity of the felony that is being addressed now, to this event, is such that in view of the rules is admissible for the limited purpose of impeaching on the credibility issue, and for that purpose only.

During both direct examination and cross examination, Bond testified that he had been convicted of a felony.

On October 2, 1986, Bond was found guilty of robbery in the second degree. This appeal timely followed.

### ADMISSIBILITY OF PRIOR CONVICTION

Bond argues that the trial court erred by failing to balance the relevant factors on the record, and that if this court engages in such balancing, it should find that Bond's prior conviction was not admissible. Bond also argues that the trial court's error in admitting the evidence was not harmless.

Former ER 609(a) states:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall

---

[1] *State v. Alexis*, 95 Wn.2d 15, 621 P.2d 1269 (1980).

be admitted if elicited from him or established by public record during cross examination but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

Prior convictions admitted for the purpose of impeachment must bear upon the credibility of the defendant. *State v. Burton,* 101 Wn.2d 1, 7, 676 P.2d 975 (1984); *State v. Jones,* 101 Wn.2d 113, 118–19, 677 P.2d 131 (1984). Evidence of prior convictions not involving "dishonesty or false statement" is only admissible under ER 609(a) if the probative value of the evidence outweighs its prejudice. *State v. Alexis,* 95 Wn.2d 15, 17, 621 P.2d 1269 (1980). Because burglary is not a crime of "dishonesty" within the meaning of the rule, *see State v. Burton, supra,* the burden is on the State, under ER 609(a)(1), to show that the probative value of the evidence of Bond's conviction for that crime outweighed the prejudice. *State v. Jones, supra* at 120.[2]

In balancing probative value versus prejudicial effect, the following factors should be considered: the importance that the jury hear the defendant's account of the events versus the importance that it know of his prior conviction; the length of the defendant's criminal record; remoteness of the prior conviction; nature of the prior crime; the age and circumstances of the defendant; centrality of the credibility issue; whether the defendant testified at the prior trial; and the impeachment value of the prior crime. *State v. Alexis, supra; State v. Jones, supra* at 121. A trial court must state, for the record, the factors which favor admission or exclusion of prior conviction evidence. *State v. Jones, supra* at 122.

---

[2]We do not cite or rely on *State v. Brown,* 111 Wn.2d 124, 761 P.2d 588 (1988), since five judges concurred in the result only and, in any event, the opinion would have only prospective application.

■ The record here reflects no articulation by the trial court of the factors to be considered in weighing probative value against prejudice. *State v. Jones, supra; State v. Alexis, supra.* The trial judge's statement that the felony is admissible for purposes of impeaching Bond's credibility due to the proximity of the felony to the current charge is not a sufficient articulation of the balancing process. However, the trial court's failure to articulate its balancing process on the record does not make admissible evidence inadmissible. *See State v. Gogolin,* 45 Wn. App. 640, 645, 727 P.2d 683 (1986).

In *State v. Gogolin, supra,* the trial court allowed evidence of a defendant's prior bad acts without first balancing on the record the probative value of the evidence against its prejudicial effect, as required by ER 404(b). Nevertheless, the Court of Appeals in that case was able to make a determination from the record as a whole that the evidence of the prior act was admissible because the evidence was relevant and probative and, therefore, the trial court's failure to state the reasons for its ruling on the record was harmless error. *State v. Gogolin, supra* at 645–46.

We believe that the same analysis applies when dealing with ER 609. In the present case, the trial court's failure to articulate its reasons for allowing the evidence on the record was error. Nevertheless, even without the aid of an articulated balancing process, we can decide from the record as a whole whether or not the evidence was admissible in the present case. Accordingly, the trial court's failure to state its reasons for its ruling on the record is harmless error because it does not affect the admissibility of the evidence in question or impede effective appellate review of the trial court's decision. To send this case back for retrial under such circumstances would be pointless. *See State v. Gogolin, supra* at 645 (citing *State v. Tharp,* 96 Wn.2d 591, 600, 637 P.2d 961 (1981)).

In balancing the above factors, we find that the trial court properly admitted evidence of the prior conviction.

334

First, although it was important that Bond testify so that his version of the matter would get before the jury, it was also equally important that the jury be fully able to evaluate his credibility as a witness. Second, he had only one prior conviction and therefore was not prejudiced by a lengthy criminal record. Also, Bond's credibility was a central issue because his testimony that he had no prior knowledge of the robbery was directly contrary to the testimony of his accomplice, Langston, who stated that he and Bond planned the robbery. It also directly contradicted his confessions to Quine and Officer Hasenwinkle. Finally, any possible prejudice due to the similarity between the prior and present crime was eliminated in the present case because the prior crime was admitted as a generic felony.

Accordingly, Bond's conviction is affirmed.

WEBSTER and PEKELIS, JJ., concur.