[No. 35992-4-I.    Division One.    August 19, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. PATRICK
ELDON HARDY, JR., *Appellant.*

*Eric J. Nielsen, Eric Broman,* and *Nielsen & Acosta*; and *Fran-Michelle Reichert,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Francis D. Zavatsky, Deputy,* for respondent.

COLEMAN, J. — We are asked to address whether the court erred by admitting Patrick Hardy's 1993 VUCSA conviction under ER 609(a)(1) when it failed to identify how the specific nature of the crime was probative of veracity. Because we find that the specific nature of the prior conviction here bears on veracity, we affirm. We also reject his claim that the court erred by admitting statements as excited utterances. While containing some detail, the statements were still made under the stress of the startling event under ER 803(a)(2). We further reject Hardy's claim that the prosecutor denied him a fair trial by shifting the burden of proof on him to disprove the victim's credibility.

Shamsa Wilkins and her friend, Margaret Smith, met a group of people downtown at Third and Yesler one night. That same night, Hardy was looking for his friends in the same area. At this point, the jury was presented with two divergent accounts.

Wilkins testified that Hardy drove up in a Black Camaro. Hardy tried to talk to Wilkins, but when Wilkins would not respond, he started calling her names. Wilkins testified that Hardy grabbed her gold necklaces. Hardy put the chains in his pocket and started pulling Wilkins across the street. Wilkins claimed that another man helped Hardy throw her into a car. The men then grabbed her four gold bracelets, her gold watch, and her money. Wilkins testified that Hardy slammed her head and pulled her hair. When Hardy then walked away, Wilkins asked him for her jewelry back. Hardy told Wilkins that if she had sex with him, he would return her jewelry. When she

refused, Hardy said, "You better not call the police, I'll kill you." Wilkins testified that Hardy told her that he had a gun but she never saw it. Hardy then drove off.

Hardy, on the other hand, testified that when he drove up to Third and Yesler to look for his friends, he heard a commotion. When he went to see what was happening, he saw Wilkins and another woman fighting. As the women fought, pieces of jewelry fell to the ground. He retrieved the jewelry and put it in his pocket. Wilkins's friend started yelling obscenities at him, and Wilkins said, "My friend said you have my jewelry." Hardy told her, "I ain't got your jewelry." Hardy then drove away. But Hardy was extremely intoxicated that night and soon passed out in his car.

Wilkins then called the police. Officer Kevin Stewart testified that he arrived approximately 30 seconds after he received the dispatch. Officer Stewart testified that Wilkins, very distraught and upset, would at times break down and cry. Smith was also "upset and excited." Wilkins told him that Hardy had grabbed her, punched her, tried to choke her, felt her breasts, and grabbed her jewelry. Wilkins also told Officer Stewart about the other man that helped pull her into the car and rob her. In the ten to fifteen minute conversation, Wilkins and Smith gave Stewart a detailed description of Hardy and his license plate number. Officer Stewart testified that as Wilkins spoke, Smith "was standing there confirming all this."

Police soon found Hardy passed out behind the wheel of his car. Officer Stewart met Hardy at the precinct and saw that his clothing matched the description. Officer Stewart searched Hardy and found the jewelry, including a pendant which said "Shamsa."

The court admitted Hardy's 1993 conviction for delivery of a controlled substance. The court analyzed the *Alexis*[1] factors on the record and made the following findings: (1) The length of the defendant's criminal history would not

---

[1]*State v. Alexis*, 95 Wn.2d 15, 19, 621 P.2d 1269 (1980).

cause great prejudice because only one conviction was at issue; (2) The 1993 conviction was not so remote such that it should be excluded; (3) The nature of the prior crime—delivery of a controlled substance—suggested a need to proceed with extreme caution given the antidrug fever; (4) The age and circumstances did not suggest excluding the conviction; and (5) Credibility was central because the victim and defendant would present divergent stories.

Finally, in analyzing its impeachment value, the court stated, "The impeachment value of the prior crime is almost nil. Drugs, prior convictions, certainly means that a person testifying might be looking at more time should he be or she be convicted. By the nature of the offense it suggests that impeachment value is not that great." The court concluded:

> On balance, then, it would appear to me that the jury should be entitled to know that there is some prior conviction. I will allow this to be in as an unnamed felony, because, as I said, of the reaction that people have to drug offenses. This way the jury will know that something did transpire, should Mr. Hardy take the stand. But they'll not be told the nature of the offense. And they then will not be deprived of any information which suggests that they closely examine all of the witnesses' testimony, including that of Mr. Hardy, should he testify.

Hardy testified and acknowledged that he had a prior felony drug conviction.

In closing, defense counsel stated, "[D]o keep a close eye on Ms. Wilkins and her story. She doesn't match up a single one of those. Her story isn't reasonable. There are huge holes in it. Her interest obviously is she wants to get him hammered for taking her jewelry. That's fine, but that's at most what he did."

In rebuttal, the prosecutor stated, "If you believe Shamsa Wilkins, what did this man do? He committed robbery. Now, defense counsel has presented no reason why she would lie, no reason why she would make this

up." Defense counsel objected. The court noted the objection and asked the prosecutor to "move on."

## ER 609(a)(1)

We are asked to address whether the court erred by admitting Hardy's 1993 VUCSA conviction after finding that the impeachment value of the crime was "almost nil." Hardy argues that the court erred by failing to explain how the specific nature of the VUCSA conviction could help the jury evaluate Hardy's credibility. The State contends that all prior VUSCA convictions have impeachment value to some degree and that the court engaged in a proper balancing of the appropriate factors.

A prior conviction involving a crime of dishonesty or false statement shall be admitted under ER 609(a)(2) if elicited from the witness or established by public record on cross examination. *State v. Jones*, 101 Wn.2d 113, 117, 677 P.2d 131 (1984), *overruled on other grounds*, *State v. Brown*, 111 Wn.2d 124, 761 P.2d 588 (1988). The decision to admit other prior convictions lies within the sound discretion of the trial court but prior convictions shall be admitted only if the probative value outweighs the prejudice to the party against whom the evidence is offered. ER 609(a)(1); *State v. Millante*, 80 Wn. App. 237, 246, 908 P.2d 374 (1995), *review denied*, 129 Wn.2d 1012 (1996).

In exercising its discretion under ER 609(a)(1), the trial court must analyze the *Alexis* factors on the record. *State v. Alexis*, 95 Wn.2d 15, 19, 621 P.2d 1269 (1980); *Jones*, 101 Wn.2d at 122. The *Alexis* factors are (1) the length of the defendant's criminal record—unnecessarily cumulative prior convictions are more prejudicial, (2) the remoteness of the prior conviction—older convictions are less probative, (3) the nature of the prior crime—how this particular crime reflects on the defendant's ability to testify truthfully, (4) the defendant's age and circumstances—whether the defendant was particularly young or extenuating circumstances existed, (5) the centrality of

the credibility issue—if credibility is essential, the necessity of hearing defendant's side of the story is enhanced, but the need for the jury not to be misled regarding defendant's credibility is also enhanced, and (6) the impeachment value of the prior crime—whether the evidence is necessary to impeach the defendant or whether other evidence can be used. *State v. Alexis*, 95 Wn.2d 15, 19, 621 P.2d 1269 (1980); *see also Jones*, 101 Wn.2d at 121 (whether defendant testified at a previous trial is also probative of veracity).

We focus our inquiry on the third *Alexis* factor and address the following issue: Did the court properly find the prior VUCSA conviction probative of veracity when it failed to identify how the specific nature of the crime bore on Hardy's veracity? There are two competing viewpoints within this court. *Compare State v. King*, 75 Wn. App. 899, 906-07, 878 P.2d 466 (1994), *review denied*, 125 Wn.2d 1021 (1995) with *State v. Begin*, 59 Wn. App. 755, 760, 801 P.2d 269 (1990), *review denied*, 116 Wn.2d 1019 (1991). This conflict stems largely from different interpretations of *Jones* and ER 609(a)(1).

In *Jones*, the Supreme Court stated that when crimes are not automatically admissible under ER 609(a)(2), the State must show that the crime has some relevance to the defendant's ability to testify truthfully. *Jones*, 101 Wn.2d at 118. The *Jones* court rejected the notion that because lying is "an integral facet of the criminal personality, all prior convictions are per se admissible." *Jones*, 101 Wn.2d at 119. Rather, *Jones* emphasized that courts should consider several factors in determining the probative value of a prior conviction, including the *Alexis* factors. *Jones*, 101 Wn.2d at 120-21.

In *State v. Begin*, 59 Wn. App. 755, 760, 801 P.2d 269 (1990), *review denied*, 116 Wn.2d 1019 (1991), this court determined that ER 609(a)(1) implies that all prior felony convictions less than ten years old have probative value to some degree. Otherwise, the trial court would not have discretion to admit them. *Begin*, 59 Wn. App. at 760. Thus,

*Begin* determined that the trial court had no duty to make an explicit finding concerning a crime's probative value because ER 609(a)(1) implied that all crimes were probative as a matter of law. *Begin*, 59 Wn. App. at 760.

This court attempted to clarify the apparent conflict in authority between *Begin* and *Jones* in *State v. King*, 75 Wn. App. 899, 906-07, 878 P.2d 466 (1994), *review denied*, 125 Wn.2d 1021 (1995). The *King* court rejected *Begin*'s assertion that all prior felonies are probative to some degree. *King*, 75 Wn. App. at 906, 910. Instead, *King* interpreted *Jones* as implying that ER 609(a)(1) crimes can be admitted only when the specific nature of the crime reflects directly on veracity. *King*, 75 Wn. App. at 906. The *King* court concluded that the trial court must articulate how the specific nature of the prior felony renders it one of the few offenses not involving dishonesty or false statement that still have probative value. *King*, 75 Wn. App. at 910, 913. Thus, *King* implies that ER 609(a)(1) crimes are rarely probative of a witness's veracity and, if their probative value is not identified, they should be excluded. *King*, 75 Wn. App. at 910, 913.

Does ER 609(a)(1) imply that all crimes are probative of a witness's veracity to some degree, as stated in *Begin*, or are only those crimes whose specific nature reflects on a witness's veracity probative, as stated in *King*? The case law is not easily reconciled. *Jones* indicates that the trial court must identify the probative value of a crime. But *Jones* does not state whether prior convictions are always probative to some degree or whether some crimes have no probative value. *Jones*, 101 Wn.2d at 118-119. On the other hand, *Begin* seems to conflict with *Jones* because *Begin* determined that ER 609(a)(1) indicates that all crimes are probative of veracity and thus, the trial court need not make this determination. *Begin*, 59 Wn. App. at 760. *King* attempted to resolve this apparent conflict by implying that only a narrow category of crimes based on a mens rea implicating or requiring dishonesty reflect on veracity; if the specific nature of the crime does not directly bear on

veracity, it should be excluded. *King*, 75 Wn. App. at 907, 913. In other words, *King* implies that if the third *Alexis* factor does not weigh heavily in favor of admission, the trial court must exclude the evidence—regardless of the other *Alexis* factors.

Carefully read in its entirety, *Jones* suggests a more fluid analysis than *King* indicates:[2] Rather than excluding a prior conviction automatically when the probative nature of a specific crime is low, the court should only admit the prior conviction when a thorough balancing on the record indicates that the need for impeachment evidence is great or other *Alexis* factors weigh heavily in favor of admission. While some conceptual conflict may exist between *Begin* and *Jones*, we believe the conflict is not as great as *King* indicates: While *Begin* stated that ER 609(a)(1) implied that all crimes are probative to some degree, it still required trial courts to engage in a thorough balancing by assessing the need for impeachment evidence in that case compared to the strength of the impeachment value. Moreover, the strict application of *King*'s reasoning would inevitably lead to categories of probative crimes, thus seemingly limiting the balancing process that *Alexis* and *Jones* contemplated. We urge the Supreme Court to clarify this issue.

■ We need not resolve this conflict here, however, because the Supreme Court has recognized that a delivery of a controlled substance conviction is probative of a witness's veracity. A VUCSA crime is one involving "secrecy and dissembling in the course of that activity, being

---

[2]The *Jones* court stated that few offenses that do not involve dishonesty or false statement are likely to be probative of a witness's veracity. *Jones*, 101 Wn.2d at 120. But in the next sentence, the court states, "Nevertherless there are several factors which a trial court should consider in determining the probative value of prior conviction evidence." *Jones*, 101 Wn.2d at 121. The court then discusses how to balance these factors, which include the *Alexis* factors. *Jones*, 101 Wn.2d at 121-22. Thus, read as a whole, we do not believe that *Jones* directs trial courts to look exclusively at how the prior offense relates to dishonesty to determine its probative value. Rather, *Jones* advises courts to balance several factors in making this determination, bearing in mind that few offenses not involving dishonesty or false statement will be probative.

prepared to say whatever is required by the demands of the moment, whether the truth or a lie." *State v. Thompson*, 95 Wn.2d 888, 892, 632 P.2d 50 (1981) (quoting *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir.), *cert. denied*, 434 U.S. 897 (1977)). While the court here did not specifically articulate this reason for probativeness,[3] it did engage in a thorough balancing of the *Alexis* factors. *State v. Gomez*, 75 Wn. App. 648, 656 n.11, 880 P.2d 65 (1994) (when new trial will inevitably arrive at same result, judicial economy disfavors remanding). Thus, while we affirm, we caution trial courts to engage in a thorough balancing of the *Alexis* factors, which includes identifying the probative nature of the specific crime. *See Alexis*, 95 Wn.2d at 19. When the crime more collaterally reflects on veracity, it should be admitted only if the need for impeachment evidence is critical. In conducting this balance, it is important to be mindlful of *Jones'* admonition that few offenses not involving crimes of dishonesty or false statement are probative of a witness's veracity. *Jones*, 101 Wn.2d at 120. When the crime lacks probative value independent of the mere fact of conviction, trial courts should err on the side of exclusion. *See Jones*, 101 Wn.2d at 121; *King*, 75 Wn. App. at 913. Moreover, if an alternative basis for impeachment exists—such as eyewitness testimony, physical evidence, or crimes of dishonesty or false statement—the impeachment value of the prior crime is substantially diminished. *State v. Millante*, 80 Wn. App. 237, 246, 908 P.2d 374 (1995), *review denied*, 129 Wn.2d 1012 (1996).

## EXCITED UTTERANCE

■ We next address whether the court erred by admitting Wilkins' and Smith's statements to Officer Stewart as excited utterances. The admission of evidence under the excited utterance exception will not be reversed absent an abuse of discretion. *State v. Strauss*, 119 Wn.2d 401, 417, 832 P.2d 78 (1992).

---

[3]The trial court here did indicate that a prior conviction was probative because the defendant would serve more time. We note that this inference has been disproved. *King*, 75 Wn. App. at 912; *Jones*, 113 Wn.2d at 119.

█ A hearsay statement may be admissible at trial under the confrontation clause if the statement contains sufficient indicia of reliability. *Strauss*, 119 Wn.2d at 415. The excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2). The excited utterance is an exception that satisfies the confrontation clause requirements. *Strauss*, 119 Wn.2d at 416.

█ Three conditions must be satisfied to qualify for the exception: (1) a startling event or condition must have occurred; (2) the statement must have been made while the declarant was under the stress of excitement caused by the event or condition; and (3) the statement must relate to a startling event or condition. *State v. Chaplin*, 118 Wn.2d 681, 686, 826 P.2d 194 (1992). The key determination is whether the declarant was still under the stress of the startling event, such that the statement could not be the result of fabrication, intervening actions, choice, or judgment. *Strauss*, 119 Wn.2d at 416.

Here, Officer Stewart arrived at the scene within 30 seconds of receiving the dispatch. The robbery had occurred minutes earlier and Wilkins remained very distraught. Smith was also upset and excited. While the women provided Officer Stewart with a description of Hardy and his car, the conversation lasted only ten to fifteen minutes and the statements were oral. *Cf. State v. Dixon*, 37 Wn. App. 867, 874, 684 P.2d 725 (1984) (court reversed admission of four-page written statement taken over period of two hours as excited utterance). Here, the court properly exercised its discretion in admitting the statements because they were not highly detailed, occurred almost immediately following the robbery, and the declarants appeared upset and distraught.

## PROSECUTORIAL MISCONDUCT

We finally consider whether the prosecutor's comments

that Hardy "presented no reason why [Wilkins] would lie" improperly shifted the burden of proof on him. He claims that such error denied him of his right to a fair trial because witness credibility was crucial. The State contends that the remarks were not prejudicial because they were responding to attacks on Wilkins's motives by defense counsel.

■ ■ To determine whether the prosecutor's conduct denied the defendant a fair trial, this court must determine whether the comments were in fact improper and if so, whether there is a "substantial likelihood" that the comments affected the jury. *State v. Reed*, 102 Wn.2d 140, 145, 684 P.2d 699 (1984). "Remarks of the prosecutor, even if they are improper, are not grounds for reversal if they were invited or provoked by defense counsel and are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective." *State v. Graham*, 59 Wn. App. 418, 428-29, 798 P.2d 314 (1990).

Here, the prosecutor was responding to defense counsel's remarks during closing, implying that Wilkins was fabricating her story out of spite. Thus, even if improper, the remarks were invited and are not particularly prejudicial such that a curative instruction would not alleviate any prejudice. The remarks were not inflammatory, and the jury instruction that the State had the burden of proving each element of the crime charged would have corrected any error. We reject this claim.

Hardy's claim that cumulative error deprived him of a fair trial is thus meritless.

Affirm.

KENNEDY, A.C.J., and Cox, J., concur.

Review granted at 130 Wn.2d 1025 (1997).