[No. 36202-0-I.   Division One.   September 9, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v.
BENJAMIN WILSON, *Appellant*.

*Lindsay Brown* and *Nielsen & Acosta*; and *Constance M. Krontz* of *Washington Appellate Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Sarah M. Roberts, Deputy*, for respondent.

ELLINGTON, J. — Benjamin Wilson was caught in a po-

lice "buy-bust" operation and convicted of delivering a controlled substance. His appeal requires us to determine whether the court improperly admitted two prior felonies. We find that admission of the priors was error, but was harmless in light of Wilson's implausible testimony and the State's overwhelming evidence. Wilson also argues that the cocaine was improperly admitted, alleging evidence tampering and a break in the chain of custody. We find no error here. The conviction is affirmed.

## Facts

Prior to the charge underlying this appeal, Wilson had three felony convictions: one for second degree theft and two violations of the Uniform Controlled Substances Act, one for possession and one for delivery. Wilson moved to exclude the VUCSA convictions, arguing that their prejudicial effect outweighed their impeachment value. Given that Wilson was being tried for delivery of a controlled substance, the court first noted that it was highly improbable that the defendant could receive a fair trial if the VUCSA convictions were admitted as named felonies. The State conceded this point, but argued that they should be admitted unnamed because they were "indicative of Mr. Wilson's propensity to not tell the truth [because they provided him] with a reason not to tell the truth."

The court expressed some skepticism as to whether a prior conviction bears on credibility. The court felt constrained by ER 609 to engage in a prejudice versus probative balancing process, however, which it began by looking at the nature of the disputed facts. The State asserted that Wilson participated in an illegal drug sale. Wilson denied any participation. The court noted that the three felony convictions provided Wilson with a "great incentive" to fabricate because of their bearing on his presumptive sentence range, acknowledged that the defendant would be prejudiced by their admission, but ruled that the convictions' probative value outweighed the prejudice "because of the critical nature of credibility in this

case." Following the court's ruling, Wilson admitted to the three felonies and a misdemeanor theft conviction on direct examination.

At trial, Officer Kenneth Saucier testified that D.M., a juvenile, brought Saucier in contact with Wilson. Saucier gave Wilson a prerecorded $10 bill in exchange for some crack cocaine. After the buy, D.M. followed Saucier, asking him to share. Saucier then broke off a small piece of the cocaine and handed it to D.M.

Officer Andrew Hall testified that he arrested Wilson shortly after receiving a radio broadcast that reported the sale. When Hall apprehended Wilson, Wilson had apparently just given a store clerk the prerecorded $10 bill. Wilson testified that a man named Roland Theard sold the cocaine and paid the store clerk with the marked bill. According to Wilson, Theard then saw the officer approaching and fled the scene—leaving Wilson to accept the change. Wilson also testified that he was an addict and would not have sold the cocaine, but would have used it himself. On rebuttal, Officer Michelle Hackett testified that Theard was in jail at the time of Wilson's arrest.

## Discussion

The first issue is whether the court erred in admitting Wilson's VUCSA convictions as impeachment evidence under ER 609. The rule authorizes the automatic admission of crimes of dishonesty if they occurred within the last 10 years. ER 609(a)(2). The rule also authorizes admission of felony convictions that are not crimes of dishonesty when the court determines that the convictions are more probative of truthfulness than prejudicial to the testifying witness. ER 609(a)(1).

A trial court's decision to admit ER 609(a)(1) felonies, and whether to admit them as named or unnamed, rests with the discretion of the trial court. *E.g.*, *State v. King*, 75 Wn. App. 899, 909-10, 878 P.2d 466 (1994), *review denied*, 125 Wn.2d 1021, 890 P.2d 463 (1995). Exercise

of this discretion must be guided by the required balancing process. *See State v. Alexis*, 95 Wn.2d 15, 19, 621 P.2d 1269 (1980),[1] *State v. Jones*, 101 Wn.2d 113, 121-22, 677 P.2d 131 (1984), *overruled on other grounds, State v. Brown*, 113 Wn.2d 520, 782 P.2d 1013 (1989).[2] The court abuses its discretion by not balancing the factors on the record, *Jones*, 101 Wn.2d at 122, or by admitting an unnamed felony to circumvent the balancing process, *King*, 75 Wn. App. at 909; *State v. Gomez*, 75 Wn. App. 648, 655-56, 880 P.2d 65 (1994). Few offenses not involving crimes of dishonesty or false statements are probative of veracity, and the State bears the burden of proving otherwise. *Jones*, 101 Wn.2d at 120. Consequently, the court must consider whether the State has demonstrated that the specific nature of the felony has probative value. *King*, 75 Wn. App. at 907, 910. Furthermore, the conviction should only be admitted where other impeachment evidence— such as per se priors and eyewitness testimony—is not sufficient. *State v. Millante*, 80 Wn. App. 237, 246 n.3, 908 P.2d 374 (1995), *review denied*, 129 Wn.2d 1012, 917 P.2d 130 (1996). And, when in doubt, the court should err on the side of exclusion. *Jones*, 101 Wn.2d at 113, 121 (quoting

---

[1]The factors listed in *Alexis* were: (1) a comparison of the importance that the jury hear the defendant's account of the events with the importance that it know of the prior conviction; (2) remoteness of the prior conviction; (3) the length of the defendant's criminal record; (4) nature of the prior crime; (5) the age and circumstances of the defendant; (6) the centrality of the credibility issue; and (7) the impeachment value of the crime. *State v. Alexis*, 95 Wn.2d 15, 19, 621 P.2d 1269 (1980).

[2]The court elaborated on the *Alexis* factors in *Jones*:

There are other important factors for the trial court to consider: (1) the type of crime—crimes of violence are not usually probative of the defendant's propensity to lie; (2) the remoteness of the prior conviction—the older the conviction, the less probative it is of the defendant's credibility; (3) the similarity of the prior crime—the greater the similarity, the greater the possible prejudice; (4) the age and circumstances of the defendant—was the defendant very young, were there extenuating circumstances?; (5) whether the defendant testified at the previous trial—if the defendant did not testify, the prior conviction has less bearing on veracity; [and] (6) the length of the defendant's criminal record—unnecessarily cumulative prior convictions are more prejudicial.

*State v. Jones*, 101 Wn.2d 113, 121-22, 677 P.2d 131 (1984) (citations omitted), *overruled on other grounds, State v. Brown*, 113 Wn.2d 520, 782 P.2d 1013 (1989).

*U.S. v. Cook*, 608 F.2d 1175, 1187 (9th Cir. 1979), *cert. denied*, 444 U.S. 1034, 100 S. Ct. 706, 62 L. Ed. 2d 670 (1980)).

■ We believe that the prior convictions should have been excluded here. At the outset, the court erred by accepting the prosecutor's suggestion that the obvious prejudice of identical priors should be mitigated by "unnaming" them before engaging in the balancing process. *See Gomez*, 75 Wn. App. at 655-56; *King*, 75 Wn. App. at 909. Nor did the required balancing occur thereafter; only a single factor—centrality of credibility—was analyzed on the record.

This factor, moreover, will often not be determinative of admissibility because it favors both admission and exclusion. *See King*, 75 Wn. App. at 910; *Jones*, 101 Wn.2d at 121. Here, we believe that the factor is neutral. Wilson was the only defense witness; no other witness could provide exculpatory evidence, so his testimony was indeed crucial to the defense case. But that the jury not be misled as to the defendant's credibility is also crucial. The *Jones* court identified this dilemma:

> [T]he more crucial the defendant's testimony, the more crucial it is that the jury not be misled as to the defendant's credibility. "Normally the court should err on the side of excluding a challenged prior conviction, with a warning to the defendant that any misrepresentation of his background on the stand will lead to admission of the conviction for impeachment purposes."

*Jones*, 101 Wn.2d at 121 (quoting *U.S. v. Cook*, 608 F.2d 1175, 1187 (9th Cir. 1979), *cert. denied*, 444 U.S. 1034, 100 S. Ct. 706, 62 L. Ed. 2d 670 (1980)).

The trial court did not give a warning here, however, but instead reasoned that the centrality of credibility factor favored admission because the effect of the prior convictions on Wilson's sentencing range provided him with an added incentive to lie. We reject this rationale as a basis for enhancing the impeachment values of prior

convictions because the presumption that a defendant's motive to lie is proportional to the degree of punishment is not self-evident. *See King*, 75 Wn. App. at 912 (*dicta*). While the supreme court did sanction the punishment rationale in *State v. Pam*, 98 Wn.2d 748, 758, 659 P.2d 454 (1983), we believe the court implicitly rejected *Pam's* rationale in *Jones*. All convictions include some form of punishment. Thus, using the fear of punishment as a basis to admit a prior conviction cannot be harmonized with *Jones'* admonition that courts should err on the side of exclusion. *See King*, 75 Wn. App. at 912 (questioning *Pam's* rationale). Moreover, the jury is well aware that no defendant desires imprisonment. Therefore, the argument that prior convictions are needed to demonstrate fear of imprisonment is strained. We therefore reject the court's rationale for admitting the VUCSA convictions.

The remaining factors were not addressed on the record and we find this failure error. *See, e.g., Jones*, 101 Wn.2d at 122. The State argues that the error is harmless, reasoning that an independent review of the record demonstrates that the convictions were admissible. *See State v. Bond*, 52 Wn. App. 326, 333, 759 P.2d 1220 (1988). To support its argument, the State asserts that Wilson's criminal history supported admission because he "had several misdemeanor theft convictions within the preceding ten years[.]" Theft convictions are per se admissible when established by public record or conceded by the witness. ER 609(a)(2). The convictions were not, however, established here. All the record contains on this point is the prosecutor's statement that "maybe [Wilson]'s got ten or fifteen misdemeanors, theft misdemeanors, that the State does not intend to produce because of the potential prejudice of those." Because these were not produced, Wilson had neither an opportunity nor a reason to rebut their authenticity. We cannot therefore presume their existence. But even if their existence were presumed, the convictions would be per se admissible under ER 609(a)(2). Thus, these convictions would demonstrate only that the State had overwhelming impeachment evidence readily

available, therefore rendering use of the VUCSA convictions unnecessary. *See Millante*, 80 Wn. App. at 246 n.3.

Moreover, the State has yet to argue how the specific nature of the crimes renders the convictions probative. *See King*, 75 Wn. App. at 910. At trial, the State stated that the VUCSA convictions were "indicative of Mr. Wilson's propensity to not tell the truth" because they gave him a reason to lie. We reject this reasoning and the State has offered no other. *See e.g., King*, 75 Wn. App. at 907-13.

We are mindful, however, that in *State v. Thompson*—a case not cited by the State—the Supreme Court approved admission of a prior delivery offense, quoting *U.S. v. Ortiz*, 553 F.2d 782, 784 (2d Cir.), *cert. denied*, 434 U.S. 897, 98 S. Ct. 277, 54 L. Ed. 2d 183 (1977): "[A] narcotics trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie." *State v. Thompson*, 95 Wn.2d 888, 892, 632 P.2d 50 (1981).

We question the underlying premise expressed here that all those convicted of delivery crimes participate in a web of lies and deceit. Common experience belies this assumption. Otherwise, police "buy-bust" operations targeted at street sales would need to be more elaborate than the usual "You looking?" and brief negotiations that characterize most transactions. The possibility of dissembling and secrecy certainly exists, especially at higher levels of the delivery hierarchy, but for the street seller, such secrecy is most likely a means to avoid detection and arrest rather than part of the crime itself. The *Alexis* and *Jones* factors direct our attention to the nature of the offense, not to generalizations about what most criminals do to avoid detection and arrest. We also question whether *Thompson* is harmonious with *Jones'* statements that few crimes are probative of veracity and that possession convictions have minimal probative value because they

"have little to do with a defendant's credibility." *See Jones*, 101 Wn.2d at 120, 122-23.[3]

But even if the nature of the prior conviction supported admission, we would still find that the VUCSA convictions should have been excluded. This is so because the felony theft conviction and eyewitness testimony provided the State with sufficient impeachment evidence. *See Millante*, 80 Wn. App. at 246 n.3.

■ Having determined that admission of the prior drug convictions was error, we must determine whether admitting the convictions was harmless. The erroneous admission of ER 609 felonies is harmless error if, within reasonable probabilities, the outcome of the trial would have been the same regardless of the error. *State v. Brown*, 113 Wn.2d 520, 554, 782 P.2d 1013 (1989).

An erroneous admission of a prior felony can affect the outcome of the trial by shifting the jury's focus from the current charge to the defendant's criminal tendencies. *Millante*, 80 Wn. App. at 246-47. This danger is minimal here, however, because the jury was already advised of such propensity by the theft charge's per se admission and by Wilson's testimony that he was a drug user and had an additional misdemeanor theft conviction.

■ Wilson's implausible testimony further reduces the likelihood that the erroneous admission affected the verdict. Hall testified to arresting Wilson immediately after he handed a $10 prerecorded bill to a store clerk. Wilson testified that Theard paid the clerk and fled as the officer approached. The clerk then handed Wilson the change. At the outset, Wilson's testimony was only marginally plausible. Once the State presented unrebutted testimony that Theard was in custody, however, what was marginally plausible became implausible. As the State's evidence was overwhelming, Wilson's implausible

---

[3]We note, however, that another panel of this court recently relied on *Thompson* to affirm admission of prior delivery offenses. *State v. Hardy*, 83 Wn. App. 167, 920 P.2d 626 (1996). As discussed, we question this reliance.

testimony rendered the error harmless. *Cf. State v. Heller*, 58 Wn. App. 414, 421-22, 793 P.2d 461 (1990).

■ The final issue is whether the improper evidence handling requires reversal. In his pro se brief, Wilson argues that Saucier tampered with the evidence by breaking the cocaine and broke the chain of custody by placing the cocaine in his personal evidence locker. Breaking the cocaine did not alter the evidence in any material way and therefore did not constitute tampering. *Cf.* RCW 9A.72.150(1)(a). The chain of custody rule provides that an exhibit is sufficiently identified when it is declared to be in the same condition as at the time of its initial acquisition. *State v. Dickamore*, 22 Wn. App. 851, 857, 592 P.2d 681 (1979). Storing cocaine in a locked and secured area does not break the chain of custody.

Affirmed.

BECKER, J., concurs.

KENNEDY, A.C.J. (Concurring in the result) — Although I find the reasoning of the majority on the ER 609(a)(1) issue to be persuasive, unless and until our Supreme Court overrules its holding in *State v. Thompson*, 95 Wn.2d 888, 892, 632 P.2d 50 (1981) that a trial judge is entitled to find a VUCSA conviction probative of credibility based on the narcotics-trafficker life style of secrecy and dissembling, I will not be inclined to reverse a trial judge who does so. Although the trial court did not rely on *Thompson*, the case provides a basis for affirming that I find impossible to ignore.

Review denied at 130 Wn.2d 1024 (1997).