[No. 64948-1.  En Banc.]
Argued May 28, 1997.    Decided November 20, 1997.

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL DENNIS CALEGAR, *Petitioner*.

*Nielsen, Broman & Associates, P.L.L.C.,* by *Eric Bro-*

*man*; and *Neal J. Philip* of *Ende, Subin & Philip*, for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Deborah A. Dwyer, Lee D. Yates, Cynthia Gannett*, and *Theresa L. Fricke, Deputies*, for respondent.

DOLLIVER, J. — Michael Calegar argues that a prior conviction for possession of a controlled substance was inadmissible to impeach his testimony in his trial for obtaining a controlled substance by means of a forged prescription.

On October 22, 1993, Calegar went to the emergency room at Valley Medical Center for an eye injury sustained in his job as a welder. The examining physician, Dr. Larry Kedig, wrote Calegar three prescriptions in black ink, including one prescription for eight tablets of Vicodin, a narcotic pain-killer. Dr. Kedig placed the prescriptions on a clipboard hung outside Calegar's examining room. A discharge nurse then came to the room, handed Calegar the prescriptions, and discharged him. It is not clear how long the prescriptions hung outside the room. Nor is it clear how long the discharge nurse had the prescriptions in her possession.

Calegar went to the Valley Medical Center pharmacy to get the prescriptions filled. Lynn McKerracher, the assistant pharmacist, made some notations on the prescriptions and began to fill them. She soon noticed, however, that there was a blue mark that appeared to be a "1" in front of the black "8" on the Vicodin prescription. Thinking someone may have altered the prescription, McKerracher called the emergency room to find out how many tablets had been prescribed. McKerracher then called the police.

The police arrived and arrested Calegar. Calegar denied having altered the prescription, but conceded he had exclusive possession of it from the time he received it from the discharge nurse until he gave it to the pharmacist. An officer searched Calegar and did not find a blue pen.

A forensic document examiner testified at trial that the blue mark in front of the number "8" was the only mark on the prescription made with that color ink. The examiner also found the mark had been made with approximately six strokes of light pressure. The examiner could not say whether the mark was intended to be a "1." Nor could the examiner conclude whether the mark was made before or after the prescription was written.

Calegar moved, in limine, to exclude a 1989 conviction for possession of a controlled substance (cocaine). The court denied Calegar's motion, reasoning that Calegar "may have a heightened reason not to tell the truth . . . because of the fact that he has a prior conviction which might impact his sentencing in this case." Verbatim Report of Proceedings at 9. The court ruled, however, that the nature of the felony could not be divulged because it would be "unduly prejudicial" as a prior drug conviction. Verbatim Report of Proceedings at 9.

Calegar admitted on direct examination that he had a prior felony conviction. Defense counsel briefly discussed this portion of Calegar's testimony in closing argument. The State never mentioned the conviction.

The emergency room physician, the pharmacist, the investigating officer, and the forensic document specialist testified for the State. The discharge nurse did not testify. A jury convicted Calegar of obtaining a controlled substance by means of a forged prescription.

Calegar appealed, arguing the trial court's admission of the prior conviction was erroneous. In an unpublished per curiam opinion, the Court of Appeals, Division One, held the trial court erred in failing to weigh on the record the impeachment value of the conviction and remanded the case for a hearing on this issue. *State v. Calegar*, 81 Wn.

App. 1046 (1996). On remand, the trial court ruled the conviction should have been excluded under *State v. King*, 75 Wn. App. 899, 878 P.2d 466 (1994), *review denied*, 125 Wn.2d 1021 (1995). The Court of Appeals informally inquired about certifying the case to this court, and it was subsequently transferred.

## I

EVIDENCE RULE (ER) 609 governs the admission of the prior convictions of a witness. Part (a) of the rule states:

> For the purpose of attacking the credibility of a witness in a criminal or civil case, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness, but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs the prejudice to the party against whom the evidence is offered, or (2) involved dishonesty or false statement, regardless of the punishment.

ER 609(a). This case concerns only section (a)(1) of the rule, which gives the court discretion to admit or exclude any prior felony not involving "dishonesty or false statement." The State bears the burden of proving that the probative value of the prior conviction outweighs any undue prejudice. *State v. Jones*, 101 Wn.2d 113, 121-22, 677 P.2d 131 (1984), *overruled in part on other grounds by State v. Ray*, 116 Wn.2d 531, 806 P.2d 1220 (1991).

Before admitting a prior offense under ER 609(a)(1), the trial court is required to balance the following factors on the record: (1) the length of the defendant's criminal record; (2) the remoteness of the prior conviction; (3) the nature of the prior crime; (4) the age and circumstances of the defendant; (5) the centrality of the credibility issue; and (6) the impeachment value of the prior conviction. *State v. Alexis*, 95 Wn.2d 15, 19, 621 P.2d 1269 (1980).

In its unpublished opinion, the Court of Appeals held that the trial court failed to "properly weigh" factor (6), the impeachment value of the conviction. *State v. Calegar,* No. 35450-7-I, slip op. at 4 (Wash. Ct. App. May 20, 1996). The court found the trial court erred in admitting the prior conviction on the basis that it gave Calegar a heightened reason to lie due to the impact of the prior conviction on his sentence in this case. This logic, the court reasoned, was rejected in *State v. King,* 75 Wn. App. 899, 878 P.2d 466 (1994), *review denied,* 125 Wn.2d 1021 (1995). The Court of Appeals reminded the parties it was the State's burden on remand "to demonstrate that the specific nature of the prior crime makes it probative of the defendant's credibility." *Calegar,* slip op. at 5 n.4.

On remand, the State argued the conviction was relevant to the defendant's credibility because "the possession of an illicit substance always involves some level of dishonesty . . . ." Hearing at 3-4 (June 12, 1996). The trial court disagreed and found it was "unable to determine" that the possession conviction had impeachment value. Findings of Fact and Conclusions of Law (Findings) at 3. The court concluded that *State v. King* "preclude[d]" the use of the prior conviction. Findings at 3. In so doing, the court indicated it had improperly relied at trial upon *State v. Begin,* 59 Wn. App. 755, 801 P.2d 269 (1990).

Although the decision of whether to admit a prior conviction is a matter of discretion for the trial court, the court "must bear in mind at all times that the sole purpose of impeachment evidence is to enlighten the jury with respect to the defendant's credibility as a witness." *Jones,* 101 Wn.2d at 118. Prior convictions admitted under ER 609 must therefore have some relevance to the defendant's ability to tell the truth. *Jones,* 101 Wn.2d at 118-19. This court has observed that "few prior offenses that do not involve crimes of dishonesty or false statement are likely to be probative of a witness' veracity." *Jones,* 101 Wn.2d at 120.

Justice Holmes discussed the relevance of prior convictions in *Gertz v. Fitchburg R.R. Co.:*

[W]hen it is proved that a witness has been convicted of a crime, the only ground for disbelieving him which such proof affords is the general readiness to do evil which the conviction may be supposed to show. It is from that general disposition alone that the jury is asked to infer a readiness to lie in the particular case, and thence that he has lied in fact. The evidence has no tendency to prove that he was mistaken, but only that he has perjured himself, and it reaches that conclusion solely through the general proposition that he is of bad character and unworthy of credit.

137 Mass. 77, 78 (1884) (holding that evidence of plaintiff's character and reputation for veracity should have been admitted after defendant introduced plaintiff's prior felony conviction).

Two cases out of this court direct our analysis. In *State v. Thompson*, 95 Wn.2d 888, 632 P.2d 50 (1981), we upheld the trial court's admission of prior convictions for manslaughter and an unspecified violation of the Uniform Controlled Substances Act (VUCSA) in the defendant's trial for second degree assault with a deadly weapon. We reasoned:

[A] narcotics trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie.

*Thompson*, 95 Wn.2d at 892 (quoting *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977)). We concluded in *Thompson* that the trial judge was entitled to find the VUCSA violation was probative of the defendant's veracity.

We analyzed this issue more extensively, and reached the opposite result, in the later case of *State v. Jones*, 101 Wn.2d 113, 677 P.2d 131 (1984), *overruled in part on other grounds by State v. Ray*, 116 Wn.2d 531, 806 P.2d 1220 (1991). There we held the trial court had erred in admitting defendant Jones's prior convictions for drug possession and carrying a concealed weapon because the convic-

tions had "little to do with a defendant's credibility as a witness . . . ." *Jones*, 101 Wn.2d at 122.

The State in *Jones* argued that Jones's criminal record reflected a propensity for lying because "lying is an integral facet of the criminal personality . . . ." *Jones*, 101 Wn.2d at 115. We explicitly rejected the State's argument stating, "[s]imply because a defendant has committed a crime in the past does not mean the defendant will lie when testifying." *Jones*, 101 Wn.2d at 119. In addition to questioning the probative value of prior convictions, we also described such evidence as "inherently prejudicial" and observed that, "[t]he State's burden is a difficult one . . . ." *Jones*, 101 Wn.2d at 120.

The Court of Appeals, Division One, has recently issued conflicting opinions discussing the probative value of prior convictions. The most notable of these cases are *State v. Begin*, 59 Wn. App. 755, 801 P.2d 269 (1990) and *State v. King*, 75 Wn. App. 899, 878 P.2d 466 (1994), *review denied*, 125 Wn.2d 1021 (1995).

In *Begin*, the trial court did not expressly determine whether the defendant's prior convictions for burglary and assault were probative of his veracity. *Begin*, 59 Wn. App. at 759. The Court of Appeals held the trial court had no duty to make an explicit finding of the probative value of the prior crime because all prior felony convictions are probative to some degree as a matter of law. *Begin*, 59 Wn. App. at 760.

The court in *Begin* reasoned that the mere fact that the trial court has the authority to admit such convictions under ER 609(a)(1) is evidence that all felonies have some degree of probative value. *Begin*, 59 Wn. App. at 760 (citing *State v. Thompson*, 95 Wn.2d at 891). The court also observed that prior felonies " 'are evidence of non-law-abiding character and such character of a witness is material circumstantial evidence concerning his likelihood of obeying legal requirements concerning veracity.' " *Begin*, 59 Wn. App. at 759-60 (quoting Comm. on Rules of Crim. Procedure & Evidence, ABA Criminal Justice Section, *Federal Rules of Evidence: A Fresh Review and Evaluation*, 120 F.R.D. 299, 358 (1988)).

In *King*, the court analyzed at length the inherent contradiction between the reasoning of *Begin* and *Jones* and ultimately followed *Jones*. *King*, 75 Wn. App. at 904-10. The court began by observing that the case law has not articulated the way in which prior felonies are probative of veracity, other than as evidence of bad character. *King*, 75 Wn. App. at 905-06. The court read *Jones* to mean that "it is only the specific nature of the prior felony which makes it probative." *King*, 75 Wn. App. at 906. The court implicitly rejected the *Begin* reasoning that evidence of "non-law-abiding" character is per se probative of veracity. Applying the law to the facts of the case, the *King* court concluded that, because the State had not argued the specific nature of the defendant's prior drug conviction was probative of the defendant's veracity, the trial court erred in admitting the prior crimes. *King*, 75 Wn. App. at 910.

At least two Division One cases decided after *Begin* but prior to *King* directly adhere to the rationale articulated by this court in *Jones*. *See State v. Gomez*, 75 Wn. App. 648, 654-55, 880 P.2d 65 (1994) (rejecting State's argument that any prior conviction has impeachment value); *State v. Roche*, 75 Wn. App. 500, 507-08, 878 P.2d 497 (1994) (rejecting argument that jurors are "entitled" to know of defendant's felony convictions). No cases have been found that adhere to the reasoning of *Begin*.

Moreover, in *State v. Wilson*, decided after *King*, the court directly questioned whether *Thompson* was harmonious with *Jones*. 83 Wn. App. 546, 553-54, 922 P.2d 188 (1996), *review denied*, 130 Wn.2d 1024 (1997). The court stated, "[t]he *Alexis* and *Jones* factors direct our attention to the nature of the offense, not to generalizations about what most criminals do to avoid detection and arrest." *Wilson*, 83 Wn. App. at 553.

The substantial weight of authority favors the approach taken in *Jones* and *King* over that of *Thompson* and *Begin*. *Jones* overrules *Thompson* insofar as *Thompson* establishes that prior drug offenses are per se probative of a defend-

ant's veracity. *Begin* is clearly an aberration that directly conflicts with *Jones*. And *King* simply adheres to the analysis this court employed in *Jones*. We overrule *Thompson* and disapprove of *Begin* insofar as those cases are inconsistent with our decision today.

The trial court did not abuse its discretion when it found on remand that the defendant's prior drug conviction was inadmissible. The State made no showing that the specific nature of the crime of possession of a controlled substance was probative of the defendant's ability to tell the truth on the witness stand. Instead, the State simply asserted that drug crimes "always involve some level of dishonesty." This type of conclusory reasoning was rejected by this court in *Jones* and we reject it again today.

## II

██ ██ Errors under ER 609(a) are reviewed under the nonconstitutional harmless error standard. *State v. Ray*, 116 Wn.2d 531, 546, 806 P.2d 1220 (1991). An erroneous ruling will therefore not amount to reversible error unless the court determines that, " ' ". . . within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." ' " *Ray*, 116 Wn.2d at 546 (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

The defense contends the error was not harmless because this was a close case based solely upon circumstantial evidence. The defense asserts the only evidence against Calegar was "a scribbled mark in front of an 8, which the state opined was a 1." Br. of Appellant at 5. The defendant points out that no one saw him alter the prescription and there was no proof he had access to a blue pen. The defendant argues that, despite this lack of evidence, the jury may have decided to convict him after hearing he was linked with the "dreaded word, 'felony' . . . ." Br. of Appellant at 5.

The State responds that the defendant's "close case" argument ignores evidence that the mark was not made

by accident. The State contends the forensic document examiner's testimony that the pen mark was made with six strokes demonstrates it was neither a random mark nor one created by someone trying to get a recalcitrant pen to write. Having thus sought to prove that *someone* deliberately altered the prescription, the State concludes that "Calegar was the *only* logical choice." Br. of Resp't at 13.

Cases finding ER 609(a)(1) errors harmless have turned on the fact that the defendant had other prior convictions that *were* properly admissible — a factor not present here. *See State v. Rivers*, 129 Wn.2d 697, 706, 921 P.2d 495 (1996) (ER 609(a)(1) error harmless where two other felonies, robbery and attempted robbery, were per se admissible under ER 609(a)(2)); *Roche*, 75 Wn. App. at 509 (ER 609(a)(1) error harmless where defendant had six convictions automatically admissible under ER 609(a)(2) and there was uncontroverted evidence of guilt); *State v. Millante*, 80 Wn. App. 237, 246-47, 908 P.2d 374 (1995), *review denied*, 129 Wn.2d 1012 (1996) (ER 609 (a)(1) error harmless where prior conviction for attempted robbery properly admitted under ER 609(a)(2)); *Wilson*, 83 Wn. App. at 554 (ER 609(a)(1) error harmless where defendant's prior theft conviction admissible under ER 609(a)(2), evidence was overwhelming, and defendant's testimony was implausible).

It is probable that the outcome of the trial would have been different had the jury not known of Calegar's prior felony conviction. First, the State's case depended entirely upon the theory that Calegar was guilty because he was the only one who had the motive or opportunity to alter the prescription. But there is a significant gap in the chain of custody. No one knows what happened to the prescription after the doctor wrote it and before the discharge nurse handed it to Mr. Calegar. It is not clear how long the prescription hung on the clipboard outside of Calegar's examining room, and the State did not call the discharge nurse to testify. Second, the State's expert could

not conclude whether the mark was a "1" or whether it was made before or after the prescription was written. Given the inferences the State asked the jury to make, it is "reasonably probable" that the fact that Calegar was a convicted felon tipped the balance against him and therefore determined the outcome of the trial.

We remand for a new trial.

DURHAM, C.J., and SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.